IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,            ) | No. CR 06-2077-TUC-DCB (GEE) |
| Plaintiff,            ) | **REPORT AND RECOMMENDATION** |
| vs.            ) | Motion to Dismiss |
| ) | |
| Fernando Campos-Gomez,            ) | |
| Defendant.            ) | |
| ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's Motion to Dismiss.  [doc. #27]

On December 13, 2006, Campos-Gomez was indicted for one count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2); one count of alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5)(a) and 924(a)(2); and one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The defendant moves this court to dismiss the charge of illegal reentry and the charge of alien in possession of a firearm on the grounds that his earlier deportation violated due process and he suffered prejudice thereby.  He argues the immigration judge at the deportation hearing erroneously told him he was not eligible for a § 212(c) waiver and further failed to properly inquire if he wanted to proceed without counsel.  He maintains he had plausible grounds for such a waiver.

1   A hearing on the motion was held on Tuesday, September 23, 2008.   Upon

2   consideration of the evidence presented at the hearing and the arguments of respective

3   counsel, the Magistrate Judge recommends the District Court deny the defendant's Motion

4   to Dismiss.   The defendant was not eligible for a § 212(c) waiver at the time of his

5   deportation hearing.

6

7   **Background**

8   Campos-Gomez was arrested on February 29, 1996, for conspiracy to possess and

9   distribute marijuana, inter alia.   His original plea deadline was April 12, 1996, and his

10  original trial date was April 23, 1996.  He consented to a continuation of these dates and

11  eventually pleaded guilty on October 4, 1996.  He was sentenced to five years' imprisonment

12  but served less than five years.

13  On April 24, 1996, after Campos-Gomez consented to a continuation but before he

14  pleaded guilty,  the Congress enacted the Antiterrorism and Effective Death Penalty Act of

15  1996 (AEDPA) which eliminated § 212(c) relief for defendants, such as Campos-Gomez,

16  convicted of an aggravated felony or a drug offense.  *Armendariz-Montoya v. Sonchik,* 291

17  F.3d 1116, 1118 (9th Cir. 2002), *cert. denied,* 539 U.S. 902 (2003).  The § 212(c) waiver

18  permitted the immigration judge to suspend deportation if equitable considerations made

19  deportation unfair.

20  Later that same year, the Congress enacted the Illegal Immigration Reform and

21  Immigrant Responsibility Act of 1996 (IIRIRA) which eliminated § 212(c) entirely and

22  replaced it with a more restrictive "cancellation of removal." *Armendariz-Montoya,*  291

23  F.3d at 1118 n. 1.

24  On October 3, 2000, Campos-Gomez appeared at his removal hearing.   The

25  immigration judge (IJ) noted that Campos-Gomez was not accompanied by an attorney.  The

26  following exchange took place:

27  IJ:  Will you be representing yourself?

28

1    CG: Yes, sir.

2    IJ:  You understand you are giving up the right to an attorney.

3    CG: Yes, your honor.

4 (Motion hearing, Exhibit 5.)   The IJ sustained the allegations against the defendant and

5 ordered him removed to Mexico. The IJ further stated there were no forms of relief available

6 to the defendant.

7    Campos-Gomez appealed the removal order to the Bureau of Immigration Appeals

8 (BIA). The appeal was rejected because it was not in English.  Campos-Gomez resubmit his

9 appeal in English, but there is no record the appeal was ever received.  On November 27,

10 2000, Campos-Gomez was deported to Mexico.

11    On June 25, 2001, the Supreme Court decided that the statutes eliminating of § 212(c)

12 relief  were impermissibly retroactive as applied to those defendants who pleaded guilty

13 when § 212(c) was still in effect.  *I.N.S. v. St. Cyr*,  533 U.S. 289, 326, 121 S.Ct. 2271, 2293

14 (2001).   The Court explained that these defendants presumably relied on the continued

15 existence of the waiver when they pleaded guilty. *Id.* at 322, 2291. Accordingly, "it would

16 surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled

17 expectations" to deprive them of the benefit of their bargain. *Id.* at 323-24, 2292.

18

19 **EVIDENCE:**

20 ***Angelita Gomez-Trejo***

21    Gomez-Trejo is the defendant's mother.  She testified at the evidentiary hearing that

22 their family came to the United States when Campos-Gomez was four years old.  Campos-

23 Gomez and his siblings performed music with their father as a way to make money.  When

24 their father left the family, Campos-Gomez continued to play music to support the family.

25    Campos-Gomez has four children who are adversely affected by his incarceration.

26

27

28

1   *Cecilia Campos-Parrado*

2      Campos-Parrado is the defendant's sister.  She testified that Campos-Gomez played

3   music to support the family after their father left.

4      She sees Campos-Gomez' children every day.  They greatly miss their father.

5

6   *Tarik Sultan*

7      Sultan is an immigration attorney who practices in Tucson.  He testified as an expert

8   about the § 212(c) waiver of admissibility.   Under this section, a person subject to

9   deportation because of a drug conviction could avoid deportation based on the equities.

10   Sultan testified it is "plausible" that Campos-Parrado would have obtained § 212(c) relief had

11   he applied for it when he was removed in 2000 assuming § 212(c) relief was still available

12   to him.

13

14   **Discussion**

15      Campos-Gomez is charged with illegal reentry.  As part of its case in chief, the

16   government must prove that Campos-Gomez was properly deported or removed prior to his

17   reentry.  Campos-Gomez argues the government cannot do this because irregularities in his

18   deportation proceeding violated his due process rights and he suffered prejudice thereby.  *See*

19   *U.S. v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2004).  Specifically, he argues his

20   earlier deportation violated due process because the immigration judge at the deportation

21   hearing erroneously told him he was not eligible for a § 212(c) waiver and further failed to

22   properly inquire if he wanted to proceed without counsel. He maintains he had plausible

23   grounds for obtaining a § 212(c) waiver and therefore suffered prejudice from the

24   immigration judge's errors.  The immigration judge told Campos-Gomez that he was not

25   eligible for a § 212(c) waiver because, by the time of the hearing, the AEDPA had eliminated

26   the waiver for defendants such as Campos-Gomez.

27

28

1    Campos-Gomez argues that he was, in fact, eligible for the § 212(c) waiver pursuant

2 to *I.N.S. v. St. Cyr*, 533 U.S. 289, 323-24, 121 S.Ct. 2271, 2291-92 (2001). In that case, the

3 Supreme Court held the waiver still applied to those aliens in deportation proceedings after

4 the waiver's elimination date provided they pleaded guilty *before* the elimination date. *Id.*

5 Campos-Gomez, on the other hand, pleaded guilty *after* the waiver was eliminated. He

6 nevertheless argues he is entitled to benefit from the holding in *St. Cyr* because he had a

7 chance to plead guilty (or go to trial) prior to the elimination date but instead chose to

8 continue plea negotiations. He argues he reasonably relied on the continued existence of the

9 waiver when he made this choice. Accordingly, he concludes the law eliminating the waiver

10 is impermissibly retroactive as applied to him. The court does not agree.

11    In *St. Cyr*, the Supreme Court held that the elimination of § 212(c) relief by AEDPA

12 and IIRIRA was impermissibly retroactive as applied to those defendants who pleaded guilty

13 when § 212(c) was still in effect. *I.N.S. v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 2293

14 (2001). The Court reasoned that those defendants relied to their detriment on the future

15 existence of the waiver when they pleaded guilty. *Id.* "If those aliens had been aware of [the

16 imminent elimination of the waiver] at the time of the plea, they might have elected to

17 proceed to trial in lieu of pleading guilty." *Armendariz-Montoya v. Sonchik* 291 F.3d 1116,

18 1121 (9th Cir. 2002). Accordingly, it would be unfair to apply the waiver elimination statute

19 to them even though the statute was in effect at the time they had their deportation hearing.

20 *St. Cyr*, 533 U.S. at 323-24, 2291-92.

21    In this case, Campos-Gomez cannot show he relied to his detriment on the existence

22 of the waiver when he made his decision to continue the plea negotiation process. To put it

23 another way: If Campos-Gomez knew the waiver would be eliminated in the near future,

24 would he have pleaded guilty right away rather than agree to a continuance?    *See*

25 *Armendariz-Montoya,* 291 F.3d at 1121. He presents no evidence that he would have done

26 so. At that time, the government had offered no plea agreement. It was in his best interests

27 to agree to the continuance in the hopes that further plea negotiations would be fruitful.

28

1    Camos-Gomez maintains he reasonably relied on the future existence of the waiver

2    when he agreed to the continuance.  He further argues this decision was detrimental because

3    had he pleaded guilty right away he would have been eligible for the holding in *St. Cyr*.  The

4    defendant, however, misconstrues the test.  It is not enough to show his decision operated to

5    his eventual detriment.   He must show *the elimination of the waiver* operated to his

6    detriment.  This he cannot do.  The elimination of the waiver by itself did not make the

7    continuance problematic. As the court explained above, the elimination of the waiver did not

8    deprive him of the benefit of his decision to continue plea negotiations.

9    Now, in retrospect, this decision turned out to be a poor one because of the eventual

10   holding in *St. Cyr*.  This, however, is of no legal moment.  The question is whether Camos-

11   Gomez "might have acted differently had he anticipated [the elimination of the waiver], not

12   whether he might have acted differently if he had anticipated *St. Cyr*." *U.S. v. Zuniga-

13   Guerrero*, 460 F.3d 733, 738 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 1011 (2007); *see

14   Armendariz-Montoya v. Sonchik* 291 F.3d 1116, 1121 (9th Cir. 2002) (The statute has an

15   impermissibly retroactive effect only where the aliens can "plausibly claim that they would

16   have acted any differently if they had known about [the waiver's elimination].").  He

17   provides no evidence that he would have done so.  Accordingly, Campos-Gomez cannot

18   show he relied to his detriment on the continued existence of the waiver.  He therefore does

19   not benefit from the holding in *St.Cyr*. *See, e.g., Armendariz-Montoya*, 291 F.3d at 1121-22

20   (*St. Cyr* does not apply to a defendant who rejected the plea agreement and was convicted

21   at trial before AEDPA took effect.); *Zuniga-Guerrero*, 460 F.3d at 737 (*St. Cyr* does not

22   apply to a defendant who "rejected an offered plea bargain two days before AEDPA took

23   effect."); *but see Ponnapula v. Ashcroft*, 373 F.3d 480, 496 (3rd Cir. 2004) ("[I]f it was

24   reasonable in *St. Cyr* for an alien to rely on the attenuated availability of § 212(c) relief in

25   *accepting* a plea agreement, we see no reason why it would be unreasonable for the same

26   alien to likewise rely in *declining* a plea agreement.").

27

28

1       Campos-Gomez argues in the alternative that the holding in *St. Cyr* applies to him

2  because he reasonably relied on the future existence of the waiver when he committed his

3  underlying crime.  Ninth Circuit precedent, however, precludes this argument.  *Saravia-*

4  *Paguada v. Gonzales*, 488 F.3d 1122, 1133 (9th Cir. 2007) ("Petitioner's claimed reliance

5  interest is per se unreasonable because of the absurd argument that aliens might have decided

6  not to commit drug crimes . . . had they known that they could not ask for a discretionary

7  waiver of deportation.") (internal punctuation omitted), *cert. denied*, 128 S.Ct. 2499 (2008).

8       Campos-Gomez argues that *Saravia-Paguada* was wrongly decided because the Ninth

9  Circuit in that case employed a "reasonable reliance" test that is inconsistent with an earlier

10  Supreme Court decision -- *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994).  This

11  court, however, is obliged to follow *Saravia-Paguada*.  *See Miller v. Gammie*, 335 F.3d 889

12  899-900 (9th Cir. 2003) (en banc).

13       Campos-Gomez further argues his underlying deportation violated due process

14  because the immigration judge failed to properly ascertain if he wanted to proceed pro per

15  and waived his right to counsel.  The failure of the immigration judge to preserve Campos-

16  Gomez' right to counsel, however, entitles him to relief only if prejudice results.  *See*

17  *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1105 (9th Cir. 2004).  Here, Campos-Gomez argues he

18  was prejudiced because counsel would have been able to properly assert his right to a §

19  212(c) waiver.  As explained above, however, Campos-Gomez had no right to a waiver.

20  Even if the immigration judge erred, Campos-Gomez cannot establish prejudice. Without a

21  showing of prejudice, Campos-Gomez cannot collaterally attack his prior deportation.

22

23  RECOMMENDATION:

24       In view of the foregoing, it is recommended that, after its independent review of the

25  record, the District Court: DENY the Motion to Dismiss. This Report and Recommendation

26  is being faxed to all counsel on this date.  Pursuant to 28 U.S.C. §636 (b), any party may

27  serve and file written objections within 10 days of being served with a copy of this Report

28

1   and Recommendation.    If specific objections are not timely filed, the party's right to de

2   novo review may be waived. *See U. S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)

3   (en banc), *cert. denied*, 540 U.S. 900 (2003).

4        The Clerk of the Court is directed to send a copy of this Report and Recommendation

5   to all parties.

6

7        DATED this 14th day of October, 2008.

8

9

10

        _____
11                   Glenda E. Edmonds
               United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28